UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
ALFRED J. NOLL                                       :
                                                                 :
                Plaintiff,                           :
                                                                 :        12 Civ. 6239 (HB)
            - against -                          :
                                                                 :        <u>OPINION & ORDER</u>
INTERNATIONAL BUSINESS MACHINES     :
CORPORATION,                                       :
                                                                 :
               Defendant.                        :
-------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**

       Plaintiff, a deaf employee of Defendant International Business Machines Corporation ("IBM"), alleges discrimination based on disability, in violation of Title I of the Americans with Disabilities Act, 42 U.S.C. § 12112(a) ("ADA"), and Sections 296(1)(a) and (3)(a) of the New York Executive Law ("NYSHRL"). Defendant now moves for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. For the reasons that follow, the motion is GRANTED.

## BACKGROUND[1]

       Plaintiff Alfred Noll is deaf and has been an employee of Defendant International Business Machines Corporation ("IBM") since 1984. (Def.'s 56.1 ¶¶ 1, 2). Noll has been promoted multiple times at IBM and has received salary increases and awards. (*Id.* ¶ 3). Noll works as a Software Engineer in IBM's Systems and Technology Group ("STG"). (*Id.* ¶ 5). In 2004, he was promoted to a Band 8 Advisory Software Engineer, and in 2007, he began working as a Function Tester. (*Id.* ¶ 6). In 2008 and 2009, Noll received unsatisfactory performance ratings. (*Id.*). In February of 2010, Noll returned to a Band 7 position as Software Engineer on the zSHIP team, which is the position that he currently holds. (*Id.* ¶ 7.) In this position, Noll and his supervisors have acknowledged his strong performance over the last three years, and in 2011 and 2012, he received performance ratings of "2+," indicating that he was an "above average contributor." (*Id.* ¶ 8.)

---

[1] These facts are undisputed unless otherwise noted.

Defendant IBM is a multinational corporation employing approximately 440,000 people worldwide. (Def. 56.1 ¶ 15).  IBM currently spends millions of dollars accommodating deaf and hard of hearing employees in the U.S. (*Id.* ¶ 32, Martinez Decl. ¶ 4). Since about 2009, IBM employees with disabilities have been able to request workplace accommodations through an electronic tool called Accessible Workplace Connections ("AWC"). (*Id.* ¶ 18, Glover Dep. 9-10, 21). Prior to that and concurrently, employees can also make accommodation requests through their Human Resources ("HR") representative or the People with Disabilities Program Manager on the diversity team. (Def. 56.1 ¶ 19). HR is responsible for reviewing, evaluating and responding to all requests for accommodation. (*Id.* ¶ 20.)

Since 2000, in IBM's Poughkeepsie office where Noll works, IBM has provided onsite interpreters to deaf and hard of hearing employees. (Def. 56.1 ¶ 22). Currently, these interpreters are available three days a week, though they initially were available four to five days a week. (Noll Dep. at 132-134.) This reduction was made on Noll's recommendation because of the declining numbers of deaf employees at IBM's Poughkeepsie office. (*Id.*) When interpreters are not on site, employees can arrange for interpreters on-demand. (*Id.*).  Other services are also available, including video remote interpreting, communication access real-time translation (CART), internet based real-time transcription, and video relay services. (*Id*. 111-13, Def.'s Mot. Ex. L).  Noll recently requested and received a z20 phone which facilitates video remote interpreter services. (Def. 56.1 ¶ 53).The Plaintiff has championed accommodations for the deaf and hard of hearing at IBM for over two decades. (Noll Dep. 113-15, Def.'s 56.1 ¶ 9.)

IBM maintains an intranet site where, among other things, audio and video files are posted. (Bodin Decl. ¶3). The video files on the intranet are varied and include training videos, corporate communication videos and employee generated and posted videos. (*Id*., Noll Decl. ¶ 6). The intranet has been described as an internal network, which enables communication, information sharing, collaboration, and professional development. (Def. 56.1 ¶ 38, West Dep. 58-59, 60, 62; Cooper Dep. 30-31; Glover Dep. 22-23). IBM's media library, which contains a portion of the video and audio on the intranet, includes over 46, 0000 video files and 35,000 audio files. (Bodin Decl. ¶ 7). Media may be posted on the intranet by any IBM employee, and is posted at a rapid rate – in the first quarter of 2013, between 3500-4000 files were added. (Def. 56.1 ¶ 38, Boding Decl. ¶¶ 3, 7).

Noll has repeatedly requested that videos be captioned and audio transcribed prior to intranet posting. (Noll Decl. ¶ 5). He would like to view information on the intranet contemporaneously with other non-deaf employees. (Noll Dep. 13-14). Despite Noll's requests, the vast majority of video and audio materials on the intranet are not captioned or transcribed prior to posting. (Noll Decl. ¶¶ 6, 9, 10, 11, 12, 15).

## DISCUSSION

Summary judgment is appropriate "only if 'there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Kuebel v. Black & Decker Inc.*, 643 F.3d 352, 358 (2d Cir. 2011) (quoting Fed. R. Civ. P. 56(a)). The Court must "constru[e] the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Id.* Nevertheless, "summary judgment may be appropriate even in the fact-intensive context of discrimination cases." *Abdu-Brisson v. Delta Air Lines, Inc.*, 239 F.3d 456, 466 (2d Cir. 2001).

### A.  ADA and NYSHRL Claims[2]

Under the ADA, a plaintiff must establish a prima facie case by "showing that (1) plaintiff is a person with a disability under the meaning of the ADA; (2) an employer covered by the statute had notice of his disability; (3) with reasonable accommodation, plaintiff could perform the essential functions of the job at issue; and (4) the employer has refused to make such accommodations." *Graves v. Finch Pruyn & Co., Inc.*, 457 F.3d 181, 183-84 (2d Cir. 2006) (internal citations and quotations omitted). It is undisputed that Noll is a person with a disability under the ADA and that IBM is an employer covered by the ADA that had notice of his disability. In addition, neither party disputes that Noll is able to perform the essential functions of his job with a reasonable accommodation. (Defs. 56.1 ¶ 8, Noll Dep. 92-93). It is also undisputed that IBM already provides accommodations to Noll, including on-demand American Sign Language

---

[2] The standards for the denial of reasonable accommodation under the NYSHRL parallel the standards under federal law, so the court considers these claims together. *See Llanos v. City of New York*, 11 CIV. 3953 DLC, 2012 WL 5457916 at *8 (S.D.N.Y. Nov. 7, 2012); *see also Gill v. Maul*, 61 A.D.3d 1159, 1160, 876 N.Y.S.2d 751, 753 (N.Y. App. Div. 2009) ("the ADA and Executive Law § 296 use the same legal standards to establish discrimination.")

("ASL") interpreters and transcripts. The only open item is whether IBM is in violation of the ADA by not providing a further accommodation, i.e., captioning all video and transcribing all audio prior to intranet posting.

### i.     Reasonable Accommodation

"Reasonable accommodation" is defined as "modifications or adjustments . . . that enable an individual with a disability. . .  to perform the essential functions of that position . . . or . . . to enjoy equal benefits and privileges of employment . . . ." 29 C.F.R. 1630.2(o). The EEOC has clarified that a reasonable accommodation "may not be able to ensure . . . the same results . . . or precisely the same benefits and privileges." Equal Employment Opportunity for Individuals With Disabilities, 56 Fed. Reg. 35726-01 (July 26, 1991).  The employer enjoys the "ultimate discretion to choose between effective accommodations . . . so long as the accommodation provided is reasonable." *Gronne v. Apple Bank For Sav*., 1 F. App'x 64, 67 (2d Cir. 2001) (quoting *Fink v. New York City Dep't of Personnel,* 53 F.3d 565, 567 (2d Cir.1995) (*citing* 29 C.F.R. pt. 1630, app). "[T]he question of whether a proposed accommodation is reasonable is fact-specific and must be evaluated on a case-by-case basis." *Kennedy v. Dresser Rand Co.,* 193 F.3d 120, 122 (2d Cir. 1999) (internal citations and quotations omitted). Although the reasonableness of an accommodation may involve factual issues that must be sent to a jury, *see, e.g., Rodal v. Anesthesia Grp. of Onondaga, P.C.*, 369 F.3d 113, 121 (2d Cir. 2004), summary judgment for the employer is appropriate if the evidence shows that the employer offered an accommodation that was "plainly reasonable." *Wernick v. Fed. Reserve Bank of New York,* 91 F.3d 379, 385 (2d Cir.1996).

Noll argues that captioning video and transcribing audio prior to intranet posting is a reasonable accommodation under the ADA. He stated that his 2008 unsatisfactory evaluation was an example of how the inaccessibility of certain materials negatively impacted his job performance. (Noll Dep. 80-81, 84-85). However, he could not specifically recall any information that was not available to him and that he required to do his job. (Noll Dep. 80-81, 84-85). Greater specificity is needed at the summary judgment phase. *Farina v. Branford Bd. of Educ.*, 458 Fed. Appx. 13, 14 (plaintiff must

4

present "specific facts" and "may not rely on unsupported conclusory statements to defeat summary judgment.")

Noll also asserts that the use of video for training purposes has increased over his time at IBM, and that the company relies on videos more now than it previously did. (Noll Decl. ¶ 12). He argues that transcription of videos is not effective because he "experience[s] great difficulty trying to simultaneously watch the video and read the transcript" (Noll Decl. ¶ 11). He offers two declarations from experts to support this claim.[3] *See* Miller Decl. ¶ 13 ("reading transcripts in lieu of captioning doesn't work well for deaf people due to the 'disconnect' between the video and transcript creating a very uncomfortable and much less effective experience than the commonplace television and movie captioning widely available today."); Pelz Decl. ¶ 16 ("the provision of transcripts does not provide equivalent access to the videos for a deaf viewer"). However, Noll's assertion that transcription is not effective does not lead to the conclusion that captioning is a necessary prior to intranet posting. The fact remains that Noll already has access to video and audio at all times through the use of ASL interpreters. He stated that "I could ask the interpreter to interpret an uncaptioned [video]" (Noll Dep. 62) and it is undisputed that Noll has access to ASL interpreters onsite, on demand, or remotely.

Noll also complains of broken links on the intranet and delays in delivery of transcripts, though Noll also said, "there was never an issue requesting a transcript." (Noll Dep. 84-85.) Even assuming that there were flaws within the transcription or posting systems, causing the delays Noll alleges, these flaws are not fatal to IBM's reasonable accommodation. Flaws within a system created to accommodate disabilities do not invalidate the system itself as a reasonable accommodation. *See Fink*, 53 F.3d at 568 ("random occurrences which, by chance, adversely affect disabled employees or candidates" are not considered discrimination against disabled people in violation of the ADA). Second, even if those flaws did impede the effectiveness of the transcription system, ASL interpretation is still available for immediate use whenever Plaintiff desires.

---

[3] Although the Defendant has moved to strike these declarations because Plaintiff did not disclose them in his Initial Disclosures or in responses to Defendant's interrogatories, I consider them in the interests of justice.

In *U.S. E.E.O.C. v. UPS Supply Chain Solutions*, the plaintiff sought access to ASL interpretation for mandatory weekly staff meetings, 620 F.3d 1103, 1105, 1007 (9th Cir. 2010). In that case, the defendant employer had offered an accommodation through summaries, contemporaneous notes and written agendas. *Id.* at 1111. The Ninth Circuit held that whether those materials "contained information sufficient to enable a person reading those documents to enjoy the same benefits and privileges of attending and participating in the weekly meetings as other employees" was a material issue of fact. *Id.* at 1113. However, unlike the Plaintiff in *UPS*, Noll already has access to ASL interpretation on demand and he does not contend that the accommodation he is offered is in any way incomprehensible or incomplete, as the plaintiff does in *UPS.* As such, Noll's reliance on *UPS* is misplaced.

The ADA "does not require the employer to provide every accommodation the disabled employee may request, so long as the accommodation provided is reasonable." *Fink*, 53 F.3d at 567. *See also Kemer v. Johnson,* 900 F.Supp. 677, 686 (S.D.N.Y.1995) ("Once a reasonable accommodation has been made, a defendant has fulfilled its obligation to make an accommodation. Thus, Defendant was not required to make Plaintiff's suggested accommodation, even if reasonable, since a reasonable accommodation had already been made") (citations omitted); *see also Bielski v. Green*, 674 F. Supp. 2d 414, 426 (W.D.N.Y. 2009) ("[A]n employee does not necessarily have the right to insist upon her preferred accommodation. The issue is whether the employer has fulfilled its duty to provide a reasonable accommodation that, if accepted, would allow the employee to perform her job.")

The accommodations with which he has been provided have allowed Noll to perform the essential functions of his position. . Accordingly, IBM has satisfied its legal obligations to provide a reasonable accommodation under the ADA and the NYHRL. Notwithstanding my conclusion, it goes without saying that IBM continue to review this and other accommodations to serve the deaf and hard of hearing employees at IBM.

### ii. Process Claims

Noll argues that IBM failed to engage in the interactive process required under the ADA when he requested captioning of video and transcripts of audio prior to internet posting. However, this Circuit has not held that the failure to engage in this process is a violation when there is no failure to provide a reasonable accommodation. *E.E.O.C. v. Yellow Freight Sys., Inc.*, 98 CIV. 2270(THK), 2002 WL 31011859 at *24 (S.D.N.Y. Sept. 9, 2002) ("the failure to engage in an interactive process is relevant only where it leads to the more fundamental failure to provide an accommodation.") Here, where a reasonable accommodation has been provided, alleged procedural violations on their own cannot support liability.

### CONCLUSION

For the foregoing reasons, Defendant's motion for summary judgment is GRANTED. The Clerk of the Court is instructed to close all open motions and this case, and remove it from my docket.

SO ORDERED.

Date: 9/24/13
New York, New York

HAROLD BAER, JR.
United States District Judge